## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MICHAEL BEAN, ) | |
| ) | |
| Plaintiff, ) | Case No. CV16-8770 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-3]. In an April 2016 written hearing decision that constitutes the Commissioner's final decision, the Administrative Law Judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work that required no more than simple, repetitive tasks. [Administrative Record ("AR") 26]. The ALJ concluded that plaintiff had not been disabled at any time since his alleged onset date because his RFC did not preclude him from performing alternative work available in significant numbers in the national economy. [AR 21-

34].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ erred in rejecting the opinion of his treating physician, Andrew Drexler, M.D. [See JS 4-19].

In June 2013, Dr. Drexler, an endocrinologist, completed a "Diabetes Mellitus Residual Functional Capacity Questionnaire" stating that he had treated plaintiff "intermittently" for six years. [AR 642]. Dr. Drexler diagnosed "Type 1 diabetes" and gave plaintiff a prognosis of "slow deterioration." [AR 642]. He identified plaintiff's symptoms as fatigue, episodic vision blurriness, general malaise, retinopathy, kidney problems, psychological problem, and vascular disease/leg cramping. Dr. Drexler left the section of the questionnaire asking for "clinical findings" blank. He said that plaintiff was not a malingerer, but that depression contributed to the severity of plaintiff's symptoms and functional limitations, which Dr. Drexler described as consistent with plaintiff's physical and emotional impairments. [AR 642-643].

Regarding plaintiff's functional limitations, Dr. Drexler opined as follows. During a "typical workday," plaintiff "occasionally" (meaning up to one-third of an eight-hour workday) experienced "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks." [AR 643 (emphasis omitted)]. Plaintiff was capable of low stress jobs. Asked how long

plaintiff could walk, sit, and stand despite his impairments, Dr. Drexler wrote "unknown." Plaintiff needed to walk around periodically during an eight-hour workday, but Dr. Drexler did not know how often or how long plaintiff needed to alternate walking with sitting or standing, nor whether plaintiff needed a job that permitted shifting positions at will. [AR 643-644]. Plaintiff sometimes needed to take unscheduled breaks during an eight-hour workday, but Dr. Drexler did not know how often or how long plaintiff such breaks needed to be. Plaintiff did not need to elevate his legs with prolonged sitting, nor did he need a cane or other assistive device. [AR 644]. Plaintiff could lift at the sedentary level of exertion and "frequently" perform postural activities. [AR 644]. Plaintiff did not have manipulative or environmental restrictions. [AR 644-645]. Plaintiff's impairments were likely to produce "good days" and "bad days," but Dr. Drexler did not know how many days per month plaintiff was likely to be absent from work as a result of his impairments. [AR 644-645].

At step two of the sequential evaluation procedure, the ALJ noted that the record contained evidence of depression and anxiety, including Dr. Drexler's assessment. [See AR 24-25 (citing Exhibit 2F, Dr. Drexler's June 2013 assessment form)]. The ALJ said that he gave "some weight" to Dr. Drexler's treating source assessment. Specifically, the ALJ "included a limitation to simple, repetitive tasks since [Dr. Drexler] indicated that [plaintiff] is capable of low stress jobs and occasionally has interferences with attention and concentration." [AR 25].

Plaintiff contends that in finding plaintiff capable of performing simple, repetitive tasks, the ALJ erred by "misconstru[ing]" or "misread[ing]" Dr. Drexler's opinion that plaintiff "occasionally" had symptoms that were "severe enough to interfere with attention and concentration needed to perform simple work tasks." [JS 6]. Plaintiff's argument lacks merit.

First, Dr. Drexler did not opine that plaintiff was "occasionally limited in attention and concentration in performing even simple tasks" as plaintiff argues. [JS 6]. Rather, Dr. Drexler indicated that plaintiff "occasionally" had pain or other symptoms (that is, he had pain or other symptoms that occurred up to one-third of an eight-hour workday), and that his symptoms "interfere[d] with" plaintiff's ability to maintain attention and concentration for even simple tasks. Dr. Drexler's assessment is ambiguous because it does not quantify the degree of actual "interference" with plaintiff's attention and concentration from his "occasional" symptoms. Since Dr. Drexler also opined that plaintiff was capable of performing low-stress

jobs, and since Dr. Drexler's opinion was ambiguous due to the many questions he was unable to answer, it was reasonable for the ALJ to construe plaintiff's attention and concentration limitations as restrictive but not disabling. See Burch, 400 F.3d at 680–681 (stating that although evidence before the ALJ "may also admit of an interpretation more favorable to" the claimant, "the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation") (internal quotation marks and brackets omitted); Morgan, 169 F.3d at 603 (stating that "[t]he ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity").

Second, the ALJ limited plaintiff to tasks that are both "simple" *and* "repetitive" and that accordingly require less attention and concentration to perform than merely simple tasks that are not repetitive. That is a reasonable interpretation of Dr. Drexler's opinion that plaintiff's "occasional" symptoms "interfered" with his attention and concentration for "even simple tasks." During the hearing, moreover, the medical expert testified that plaintiff retained the ability to perform "simple and repetitive" tasks [AR 25, 64], so substantial evidence in the record supports the ALJ's interpretation of Dr. Drexler's opinion.

Third, even if ALJ's limitation to "simple, repetitive tasks" is considered a rejection of Dr. Drexler's controverted treating opinion rather than a reasonable interpretation of it, the ALJ articulated legally sufficient reasons for not fully crediting that opinion. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.'"). The specific, legitimate reasons articulated by the ALJ include a paucity in the record as a whole of supporting clinical findings or abnormal mental status examination results; plaintiff's failure to seek or obtain regular or ongoing mental health treatment and his refusal to take antidepressant medication offered by his physician; and medical evidence in the record suggesting that plaintiff may have been malingering or may have had a factitious disorder[1]. [See AR 24-26, 63-64, 1356, 1409-1412, 1448, 1460]. See 20 C.F.R. §§

---

[1] Factitious disorder is "a mental disorder in which a person acts as if he or she has a physical or mental illness. People with factitious disorder deliberately create or exaggerate symptoms of an illness. They have an inner need to be seen as ill or injured." Cleveland Clinic website, Health Library, Articles, An Overview of Factitious Disorders, *available at* https://my.clevelandclinic.org/health/articles/an-overview-of-factitious-disorders (last visited Sep. 18, 2017).

404.1527(c)(3)-(4), 416.927(c)(3)-(4)(stating that consistency and supportability of a medical opinion with the record as a whole are factors that generally warrant giving the opinion more weight); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(noting that "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that the ALJ properly rejected a treating physician's disability opinion that was "conclusory and unsubstantiated by relevant medical documentation," and noting that the record contained "little objective evidence" to support the alleged impairment)(quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).

The ALJ rationally interpreted Dr. Drexel's ambiguous opinion regarding the functional effects of plaintiff's impairment in attention and concentration or, alternatively, articulated specific, convincing reasons supported by substantial evidence in the record for rejecting it. Accordingly, plaintiff has shown no basis for reversing the Commissioner's decision.

## Conclusion

For the reasons described above, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

September 27, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge